IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 29, 2011 Session

## BRANDON MOBLEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 89072    Bob R. McGee, Judge**

_____

**No.  E2010-00379-CCA-R3-PC - Filed August 18, 2011**
_____

JERRY L. SMITH, Judge, Concurring in Part and Dissenting in Part

I concur in the holding of the majority that the allegations of ineffective assistance of counsel save for the failure to ask the expert witness whether Petitioner could premeditate do not have merit. However, I dissent from the holding that counsel was ineffective in failing to ask the defense's expert the ultimate question of whether Petitioner could have "premeditated" the murders for which he was convicted.

The majority correctly notes that the trial judge improperly barred Dr. Auble's testimony when the prosecution objected to its presentation.  The majority also notes correctly that the trial court, once the State's objection to that testimony was withdrawn, directed defense counsel not to ask Dr. Auble whether Petitioner could form the requisite intent for first degree murder, i.e., premeditation.  The majority however holds that counsel's acquiescence to the trial court's instruction constitutes deficient performance at trial.  I fail to see how obeying the instructions, even if erroneous, of the trial court at a trial constitutes deficient performance regarding the trial.  If this failure to object to the limiting instruction with regard to Dr. Auble's testimony had resulted in a finding of waiver of the issue on direct appeal then I might agree but that issue is not before us. Indeed, it appears highly unlikely this court would have applied waiver to the narrow question presented here because this Court on direct appeal gave plenary review of all the issues regarding Dr. Auble's testimony that were presented. *See State v. Brandon Mobley*, No. E2006-00469-CCA-R3-CD, 2007 WL 1670195, at *13-14 (Tenn. Crim. App. at Knoxville, June 11, 2007, *perm. app. denied*, (Tenn. Sept. 24, 2007).  It should be noted here that the trial court's prohibition on counsel asking Dr. Auble the direct question of the petitioner's ability to premeditate was not directly presented on appeal, but the appeal was handled by an attorney other than trial counsel.

While I agree with the majority that this Court's holding of harmless error in the direct appeal with respect to the trial court's decisions concerning Dr. Auble's testimony do not present a law of the case scenario in this appeal, that prior holding appears to me to render the majority's holding in

the instant case inconsistent with that prior holding. This Court stated with regard to Dr. Auble's testimony:

> [T]he Defendant testified on his own behalf, and then the State withdrew its objection to Dr. Auble's testimony. She went on to fully testify about the Defendant's mental issues and their effect on his ability to premeditate. Thus, the State argues this is harmless error on the part of the trial court. . . . We conclude that the error was harmless because Dr. Auble was eventually allowed to testify.

*Id*. at \*14 (citations ommitted).

Indeed, as the majority concedes Dr. Auble did testify "extensively" regarding Petitioner's social background, childhood and mental health history. She stated Petitioner was "someone who's impulsive, who reacts, who doesn't think . . . he responded [on the day of the offenses] without thinking through what he was doing." It certainly would have been better if the trial court had not erred and had allowed trial counsel to ask the direct question of whether Petitioner had the mental capacity to premeditate the murders for which he was on trial, Dr. Auble's testimony did in fact without using the word "premeditation" convey to the jury her opinion of Petitioner's limited ability to plan and to control his behavior. Dr. Auble's testimony was presented against the backdrop of the following buzz saw of evidence concerning premeditation recounted by this court on direct appeal:

> Viewed in a light most favorable to the State, the evidence is sufficient to sustain the Defendant's convictions of first-degree premeditated murder. The proof at trial showed that the Defendant called the victim, Nance, to set up a meeting. The Defendant owed Nance money for crack cocaine fronted to him by Nance. The Defendant took his gun with him, got into the care with the two victims, and shot them both. The Defendant pushed the driver out of the car and drove off with one of the victims still in the passenger seat. There was testimony that the Defendant appeared to be changing the music as he drove away from the crime scene, and he nodded to a witness as he drove by. The Defendant pushed or dragged the other victim, Nance, down a hill behind a church in an attempt to hide his body. He then went to an ex-girlfriend's house where he cleaned out the car and attempted to call Po-Boys tires, a buyer of rims. Finding they were closed for Memorial Day, the Defendant called his cousin, who followed the Defendant to dispose of the car by burning it. The Defendant had his step-mother check into a motel where he disposed of money and drugs, and smoked a marijuana cigarette. When the Defendant attempted to leave the motel room, he was arrested.

-2-

From this evidence, a rational jury could conclude that the admittedly intentional killing was premeditated because the Defendant had a motive to kill Nance, and Hoffman happened to be with him. An additional possible motive was the theft of Hoffman's car, which appeared to have valuable rims. The Defendant called Po-Boys Tires after the killings; he did not succeed in selling the rims only because it was a holiday, and the store was closed. Additionally, a rational jury could have concluded the Defendant attempted to destroy the evidence after the killings, including testimony that he appeared to be changing the radio station as he drove away. Additionally, there was testimony that the Defendant acted as if nothing was wrong in phone conversations shortly after the killings. All of these fall under the factors that a rational jury can use to infer premeditation on the part of the Defendant.

*Id*. at * 10-11.

Under these circumstances, Petitioner may have established a possibility of a different result at his trial had Dr. Auble been asked directly to give her opinion as to his ability to premeditate, but unlike the majority I am not convinced he has met the high burden of showing a "reasonable probability" of a different result. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

I would not grant Petitioner a new trial on the basis of ineffective assistance of counsel therefore, I dissent.

_____
JERRY L. SMITH, JUDGE